**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LANCE PEROUTKA, NIKKI PRIBOW and OTIS FUNG, individually on behalf of themselves and all others similarly situated, | : : : : : | Case No.  1:18-cv-6827 |
| Plaintiffs, | : : | |
| v. | : : | **CLASS ACTION COMPLAINT** |
| | : | |
| Yeti Coolers, LLC | : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : : : | |

Plaintiffs, Lance Peroutka and Otis Fung (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of Yeti Coolers, LLC (hereinafter "Defendant") with respect to the marketing and sales of the Yeti Rambler Colster product (the "Product") throughout the States of Wisconsin and New York, and throughout the United States.

2.      The Product is purportedly designed and marketed as a drastic improvement over standard can and bottle coolers that keep consumers' drinks cold. Defendant claims that the Product keeps drinks cold "so long that you'll have to re-think your understanding of a few natural laws."

3.      Defendant manufactures, sells, and distributes the Product using a marketing and advertising campaign centered around claims that widely appeal to outdoorsmen and women, fishermen and hunters alike. It claims the Product's so-called "Load-and-Lock Gasket" technology secures drinks in place and fits cans and bottles "like a glove—a glove with double-wall vacuum insulation," and that its "No Sweat Design keeps your hands dry while your drink stays cold."

4.      However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Product does not in fact fit cans and bottles "like a glove." Rather, the Product's design actually permits cans and bottles to easily slip out of the casing while consumers attempt to drink.

5.      The friction created when the Load-and-Lock technology is used with certain

aluminum cans produces metal shavings which can be ingested by the consumer and/or produce a metallic taste.

6.      Plaintiffs and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Product would fit standard 12 oz. cans and bottles without slipping out of the Product when purchasing the Product.

7.      Plaintiffs and Class Members paid a premium for the Product over and above comparable cooler products that purport to keep beverages cold.  Given that Plaintiffs and Class Members paid a premium for the Product based on Defendant's misrepresentations, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

8.      Defendant's conduct violated and continues to violate, *inter alia*, Wisconsin Statute § 100.18, New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act. Defendant breached and continues to breach its express and implied warranties regarding the Product. Defendant has been and continues to be unjustly enriched through its continued marketing and sale of the Product. Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period") or modified by the parties' tolling agreement.

## FACTUAL BACKGROUND

9.      Consumers like Plaintiffs have become increasingly interested in specialty products and retail outlets that cater to and reflect their active lifestyles and love of the outdoors. Defendant capitalized on these consumers' desire for these products. They market $300 coolers that are grizzly proof, memberships in cooperatives (e.g., REI), and cup holders that not only keep drinks cold longer, but are "rust-resistant" and maintain the stability of drinks under the most rugged of circumstances.  Indeed, consumers willingly paid a premium for products

associated with the active outdoor lifestyle. Reasonable consumers, including Plaintiffs and

Class Members, value the Product for important reasons, including the belief that they are not

only safe, but a drastic improvement over alternative products that are not designed for the

outdoors, i.e., products lacking the so-called "Load and Lock Gasket" technology.

10.     Despite the Product having the problems described above, Defendant markets it as

a significant improvement in holding cans and bottles. The Product's recent labeling is depicted

below:



11.     Defendant's representations that the Product "k

place" is false, misleading, and deceptive because the Product does not, in fact, keep bottles and

cans securely in place. Yeti's own consumers have repeatedly brought this to Yeti's attention as

sampled below:



12.     Defendant's statement about its Product would mislead a reasonable person. For example, Defendant states that the Product "fits standard 12 oz and bottles." A reasonable consumer would interpret to mean that the Product securely holds standard 12oz cans and bottles.

13.     However, the Product cannot securely hold the majority of beer bottles used in the United States, which, according to the 2017 market share of the leading domestic beer brands in the United States, are:

        A.     Bud Light 18.4%

        B.     Coors Light 9.6%

C.      Miller Light 8.1%

D.      Budweiser 6.5%

E.      Michelob Ultra Light 5.7%

F.      Natural Light 3%

G.      Busch Light 7.9%

H.      Miller High Lite 1.7%

I.      Busch 1.8%

J.      Blue Moon Belgian 1.5%

14.      Of the top 10, the Product cannot securely hold Bud Light, Coors Light, Budweiser, Michelob Ultra Light, Natural Light, Busch Light or Busch. This list does not include the countless craft beer bottles the Product cannot hold securely.

15.      Whether Defendant's statements are deceptive is judged by whether it would deceive or mislead a reasonable person.

16.      Surveys and other market research, including expert testimony Plaintiffs intend to introduce, will demonstrate that Defendant's use of the term "Load and Lock" is misleading to a reasonable consumer because the reasonable consumer believes that these terms mean what they say when used to describe goods such as the Product.

17.      Consumers lack the meaningful ability to test or independently ascertain or verify whether the Product is indeed susceptible to corrosion, inter-metallic reactions, or whether it is able to secure bottles and cans, especially at the point of sale. Consumers would not know the true nature of the Product's shortcomings by simply reading the label.  On the contrary, they are lured and duped into purchasing the product for an average retail price of $24.99 based on Defendant's false representations regarding its so-called "Load and Lock" technology and resistance to rust.

18.     Discovering that bottles easily slip out of the Product or whether the Product creates a soupy mix of rusty or corrosive metal shavings when used frequently with cans (any cans) is beyond the ability of the average consumer.  That is why, even though the Product touts its rust-resistant features and stability, such features are attendant with multiple qualifications and various locations on the label and website such that the reasonable consumer would not understand – nor are they expected to understand or test- whether the Product will perform as represented.

19.     Moreover, the reasonable consumer is not expected or required to scour the market or test the Product in order to confirm or debunk Defendant's prominent Product claims and representations.

20.     Defendant did not disclose the propensity of the Product to produce metal shavings when attempting to secure a can and it did not disclose that when drinking from bottles consumers risk the bottle slipping out and smacking them in the teeth.

21.     Defendant has thus violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

22.     Consumers rely on label representations and information in making purchasing decisions.

23.     The marketing of the Product as capable of securing standard bottles and cans in a prominent location on the label of the Product, throughout the Class Period, evidences Defendant's

awareness that such claims are material to consumers.

24.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

25.     Plaintiffs and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

26.     Plaintiffs and Class members would not have purchased the Product had they known the representation about the product were not true.

27.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class members.

28.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a Product labeled as capable of keeping bottles and cans "securely in place" over comparable products not so labeled.

29.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the Class members in that they:

a.   Paid a sum of money for a Product that was not what Defendant represented;

b.   Paid a premium price for a Product that was not what Defendant represented;

c.   Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted; and

d.   Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented.

30.     Had Defendant not made the false, misleading, and deceptive representations and

omissions, Plaintiffs and the Class members would not have been willing to pay the same amount for the Product they purchased, and, consequently, Plaintiffs and the Class members would not have been willing to purchase the Product.

31.     Plaintiffs and the Class members paid for a Product that was supposed to be safe, free of metal shavings and other corrosive material, and one capable of securing standard 12 oz. cans or bottles, but instead received a Product that places consumers in jeopardy of bodily harm, including broken teeth, property damage through spills, and ingesting unspecified and unknown quantities of metallic liquids. The Product Plaintiffs and the Class members received was worth less than the Product for which they paid.

32.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Product over the cost of competitive products not bearing a similar label with claims of superior performance.

33.     Plaintiffs and the Class members all paid money for the Product. However, Plaintiffs and the Class members did not obtain the full value of the advertised Product due to Defendant's misrepresentations and omissions. Plaintiffs and the Class members purchased, or paid more for, the Product than they would have had they known the truth about the Product. Consequently, Plaintiffs and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff Lance Peroutka is a citizen of the State of Wisconsin, and Plaintiff Otis Fung is a citizen of the State of New York, and Defendant is a citizen of the State of Texas; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

35.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

36.     Venue is proper because Plaintiff Otis Fung and many Class Members reside in the Eastern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### PLAINTIFFS

37.     Plaintiffs, Lance Peroutka and Nikki Pribow, are individual consumers who, at all times material hereto, were citizens of Outagamie County, in the State of Wisconsin. Plaintiffs purchased the Product online in Wisconsin on or about October 6, 2018 from Backcounty.com. Mr. Peroutka and Ms. Pribow are married to one another.

38.     The packaging of the Product Plaintiffs purchased contained the representation that the Product  kept bottles or cans "securely in place" by virtue of its "Load-and-Lock Gasket" technology.   Plaintiffs believed that products which are so labeled would not leak, sweat liquids, cause an inter-metallic reaction or corrosion, or slip out of the Product when consuming beverages.

39.     Plaintiffs read the label of the Product and were lured in part by Yeti's representations about the technology and likewise believed that the product facilitated drinking cold beverages due to, among other things, its double-wall vacuum insulation.

40.     Plaintiffs soon found out these representations were untrue, Plaintiff Peroutka found himself drinking a metallic slurry mix of metal, and suffered several "close calls" and accidents triggered by standard-sized bottles falling out of the Product.

41.     Plaintiff Otis Fung is an individual consumer who, at all relevant times hereto,

10

was a citizen of the borough of Brooklyn, in the State of New York. Plaintiff purchased the Product on or about April 20, 2018 on online retailer Amazon's website.

42.     Mr. Fung, like Mr. Peroutka and Ms. Pribow, read and relied on the representations on the product's label, as advertised in various retail and online stores, and assumed the product would securely hold bottles and cans and be safe due to the Product's advertised "Load-And-Lock Gasket" technology. Soon after he purchased the Product, Mr. Fung, placed a standard 12 oz. bottle of beer into the Product. The beer bottle slipped from the Product. This was not an isolated incident as the Product consistently fails to perform as advertised.

43.     Had Defendant not made the false, misleading, and deceptive representation that the Product kept bottles or cans "securely in place" by virtue of its "Load-and-Lock Gasket" technology, Plaintiffs would not have been willing to pay the same amount for the Product, and, consequently, they would not have been willing to purchase the Product. Plaintiffs purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product. The Product Plaintiffs received was worth less than the Product for which they paid. Plaintiffs were injured in fact and lost money as a result of Defendant's improper conduct.

**DEFENDANT**

44.     Defendant, Yeti, is a corporation with its principal place of business at 5301 Southwest Parkway, Suite 200, in Austin, TX 78735. Defendant manufactures, markets, advertises and distributes the Product throughout the United States. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

**CLASS ALLEGATIONS**

45.     Plaintiffs bring this matter on behalf of themselves and those similarly situated.

As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

46.     The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Plaintiffs" or "Class").

47.     Plaintiff Fung also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the State of New York at any time during the Class Period (the "New York Subclass").

48.     Plaintiffs Peroutka and Pribow also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the State of Wisconsin at any time during the Class Period (the "Wisconsin Subclass").

49.     The Class and the New York and Wisconsin Subclasses shall be referred to collectively throughout the Complaint as the Class.

50.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

51.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

52.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

        a.   Whether Defendant is responsible for the conduct alleged herein which was

uniformly directed at all consumers who purchased the Product;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

c. Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Product;

d. Whether Defendant's false and misleading statements concerning its Product was likely to deceive the public;

e. Whether Plaintiffs and the Class are entitled to injunctive relief;

f. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

53.    <u>Typicality</u>: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Product. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

54.    <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their consumer fraud claims are common to all members of the Class and they have a strong interest in vindicating their rights; they have retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent

and varying adjudications.

55.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact

identified above predominate over any other questions affecting only individual members of the

Class. The Class issues fully predominate over any individual issue because no inquiry into

individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive

and misleading marketing and labeling practices.

56.     <u>Superiority</u>: A class action is superior to the other available methods for the fair

and efficient adjudication of this controversy because:

    a.   The joinder of thousands of individual Class Members is impracticable,
cumbersome, unduly burdensome, and a waste of judicial and/or litigation
resources;

    b.   The individual claims of the Class Members may be relatively modest
compared with the expense of litigating the claim, thereby making it
impracticable, unduly burdensome, and expensive—if not totally
impossible—to justify individual actions;

    c.   When Defendant's liability has been adjudicated, all Class Members' claims
can be determined by the Court and administered efficiently in a manner far
less burdensome and expensive than if it were attempted through filing,
discovery, and trial of all individual cases;

    d.   This class action will promote orderly, efficient, expeditious, and appropriate
adjudication and administration of Class claims;

    e.   Plaintiffs know of no difficulty to be encountered in the management of this
action that would preclude its maintenance as a class action;

    f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Product.

57.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

58.   Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, Defendant has engaged in conduct resulting in misleading consumers about key features and benefits of its Product related to its ability to secure bottles and cans. Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiffs would purchase the Product again if the Product's label or design was changed so that they rely on the Product's representations regarding its ability to secure bottles and cans without placing consumers in jeopardy of injury or property damage, and regarding its resistant to rust and/or corrosion.

59.   The injunctive Class is properly brought and should be maintained as a class

action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a.  <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendant's Product has been purchased by thousands of people throughout the United States;

    b.  <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

        i.  Resolution of the issues presented in the 23(b)(3) class;

        ii.  Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

        iii.  Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Product as "rust-resistant" and capable of securing bottles and cans through its "Load-and-Lock Gasket technology.

    c.  <u>Typicality</u>: Plaintiffs claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices).

Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Defendant's Product which was sold unfairly and deceptively to consumers throughout the United States.

d.   <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class. Their consumer protection claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights. In addition, Plaintiffs and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

60.   The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Product using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the potential for injury and/or property damage in connection with its Product. Plaintiffs would purchase the Product again if the Product was re-designed to prevent rust and bottles from slipping out of the Product, or changed so that their bottles and cans are indeed securely locked into place.

**<u>FIRST CAUSE OF ACTION</u>**
**<u>VIOLATION OF NEW YORK GBL § 349</u>**
**(On Behalf of Plaintiffs and New York Subclass Members)**

61.   Plaintiffs repeat and reallege each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

62.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

63.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Product.

64.     There is no adequate remedy at law.

65.     Defendant misleadingly, inaccurately, and deceptively present its Product to consumers.

66.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Product as capable of securing bottles and cans is misleading in a material way in that it, *inter alia*, induced Plaintiffs and New York Subclass Members to purchase and pay a premium for Defendant's Product and to use the Product when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

67.     Plaintiffs and the Wisconsin and New York Subclass Members have been injured inasmuch as they paid a premium for products—contrary to Defendant's representations—failed to secure bottles and cans as represented.  Accordingly, Plaintiffs and the New York Subclass Members received less than what they bargained and/or paid for.

68.     Defendant's advertising and Product's packaging and labeling induced the

Plaintiffs and the New York Subclass Members to buy Defendant's Product and to pay a premium price for them.

69.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and the New York Subclass Members have been damaged thereby.

70.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiffs and the New York Subclass Members)**

71.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

72.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

73.     N.Y. Gen. Bus. Law § 350a (1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

74.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Product inasmuch as they misrepresent that the Product is

capable of securing bottles and cans through its "Load-and-Lock" Gasket technology.

75.    Plaintiffs and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Product which was—contrary to Defendant's representations capable of securing bottles and cans through its "Load-and-Lock" Gasket technology. Accordingly, Plaintiffs and the New York and Subclass Members received less than what they bargained and/or paid for.

76.    Defendant's advertising, packaging and product's labeling induced the Plaintiffs and the New York Subclass Members to buy Defendant's Product.

77.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

78.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

79.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Product's packaging and labeling.

80.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product was and continue to be exposed to Defendant's material misrepresentations.

81.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## FALSE ADVERTISING UNDER WISCONSIN DECPTIVE TRADE PRACTICES ACT ("DTPA"), WIS.  STAT. §100.18
### (On Behalf of Plaintiffs and the Wisconsin Subclass)

82.    Plaintiffs repeat and reallege each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

83.     Plaintiffs bring this claim for violation of Wis. Stat. §100.18, on behalf of the

Class.

84.     Under Wis. Stat. §100.18(1) "No person, firm, corporation . . . with intent to sell,

distribute, increase the consumption of or in any wise dispose of any . . .  merchandise, . . ., or

anything offered by such person, firm, corporation . . . directly or indirectly, to the public for sale

. . . use or other distribution, or with intent to induce the public in any manner to enter into any

contract or obligation relating to the purchase, …, use…shall make, publish, disseminate,

circulate, or place before the public, or cause, directly or indirectly, to be made, published,

disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or

other publication . . . or in any other way similar or dissimilar to the foregoing, an advertisement,

announcement, statement or representation of any kind to the public relating to such purchase. . .

which advertisement, announcement, statement or representation contains any assertion,

representation or statement of fact which is untrue, deceptive or misleading."

85.     The Product is considered merchandise under Wis. Stat. §100.18(1).

86.     Defendant falsely advertised the Product as being capable of securing bottles and

cans through its "Load-and-Lock" Gasket technology.

87.     The Product, contrary to Defendant's representations, does not adequately secure

cans and bottles in place, nor does it prevent leaking or ingestion of corrosive materials.

88.     Were it not for Defendant's false statements, neither Plaintiffs nor the putative

class members would have paid a premium for the Product.

89.     Defendant's actions, representations, and conduct violated, and continue to

violate. Wis. Stat. § 100.18.

**FOURTH CAUSE OF ACTION**
**Intentional misrepresentation**

**(On Behalf of Plaintiffs and All Class Members)**

90.     Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

91.     Defendant misrepresented the performance of the Product as set forth herein, including, to wit, misrepresenting that the Product was or held most standard sized bottles.

92.     Defendant made these misrepresentations knowing them to the untrue or without caring whether they were true or false.

93.     Defendant made the misrepresentation with the intent to deceive and induce Plaintiffs and Class Member to act up or act to their deception.

94.     A reasonable person in the Plaintiffs and Class Member's situation would rely on Defendant's misrepresentations regarding the Product.

95.     The Plaintiffs and Class Members suffered damages as a result of the Defendant's misrepresentations and are entitled to recover damages from the Defendant in an amount to be determined at trial, including, without limitation, monetary, compensatory, double and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest and attorneys' fees and costs.

<u>**FIFTH CAUSE OF ACTION**</u>
<u>**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**</u>
**(On Behalf of Plaintiffs and All Class Members)**

96.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

97.     Plaintiffs and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiffs and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

98. Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a. **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b. **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c. **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d. **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq*., and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

e. **Colorado**: Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f. **Connecticut:** Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g. **Delaware:** Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h. **District of Columbia:** Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i. **Florida:** Defendant's practices were and are in violation of the Florida

Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq*.

j.   **Hawaii:** Defendant's practices were and are in violation of the Hawaii's
Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and
Haw. Rev. Stat. § 480-2.

k.   **Idaho:** Defendant's practices were and are in violation of Idaho's Consumer
Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.   **Illinois:** Defendant's acts and practices were and are in violation of Illinois'
Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat.
505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.   **Indiana:** Defendant's practices were and are in violation of Indiana's
Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.   **Kansas:** Defendant's practices were and are in violation of Kansas's
Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.   **Kentucky:** Defendant's practices were and are in violation of Kentucky's
Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.   **Maine:** Defendant's practices were and are in violation of the Maine Unfair
Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me.
Rev. Stat. Ann. § 1101, *et seq.*

q.   **Maryland:** Defendant's practices were and are in violation of Maryland's
Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r.   **Massachusetts:** Defendant's practices were unfair and deceptive acts and
practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen.
Laws ch. 93A, § 2.

s.   **Michigan:** Defendant's practices were and are in violation of Michigan's

Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.   **Minnesota:** Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.   **Missouri:** Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.   **Nebraska:** Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.   **Nevada:** Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:** Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:** Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:** Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.   **North Carolina:** Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

bb.   **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15- 01, *et seq.*

cc. **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq*. and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq*.

dd. **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq*.

ee. **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq*.

ff. **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq*.

gg. **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq*.

hh. **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq*.

ii. **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq*.

jj. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq*.

kk. **Vermont:** Defendant's practices were and are in violation of Vermont's

Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll. **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq*.

mm. **West Virginia:** Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq*.

nn. **Wisconsin:** Defendant's practices were and are in violation of Wis. Stat. §100.18, *et seq*.

oo. **Wyoming:** Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101*, et seq*.

99.    Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Product is capable of securing bottles and cans through its "Load-and-Lock" Gasket technology.

100.    Contrary to Defendant's representations, the Product is capable of securing bottles and cans through its "Load-and-Lock" Gasket technology.

101.    Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Product.

102.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

103.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members paid a premium for the Product.

104.    As a result of Defendant's violations, Defendant has been unjustly enriched.

105.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive

and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiffs and All Class Members)**

106.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

107.    Defendant provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is capable of securing bottles and cans through its "Load-and-Lock" Gasket technology.

108.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

109.    These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

110.    Plaintiffs and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

111.    Defendants have been put on notice of its breach by several of its consumers, giving Defendant an opportunity to cure its breach, which it refused to do.

112.    Defendant breached the express warranty because the Product is not in fact rust-resistant and capable of securing bottles and cans through its "Load-and-Lock" Gasket technology.

113.    Defendant thereby breached the following state warranty laws:

    a.    Code of Ala. § 7-2-313;

28

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.    Mont. Code Anno. § 30-2-313;

aa.    Neb. Rev. Stat. § 2-313;

bb.    Nev. Rev. Stat. Ann. § 104.2313;

cc.    R.S.A. 382-A:2-313;

dd.    N.J. Stat. Ann. § 12A:2-313;

ee.    N.M. Stat. Ann. § 55-2-313;

ff.    N.Y. U.C.C. Law § 2-313;

gg.    N.C. Gen. Stat. § 25-2-313;

hh.    N.D. Cent. Code § 41-02-30;

ii.    II. O.R.C. Ann. § 1302.26;

jj.    12A Okl. St. § 2-313;

kk.    Or. Rev. Stat. § 72-3130;

ll.    13 Pa. Rev. Stat. § 72-3130;

mm.    R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code. Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.   Wyo. Stat. § 34.1-2-313.

114.   As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Product, in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION
VIOLATION OF THE MAGNUSON-MOSS
WARRANTY ACT, 15 U.S.C. § 2301 et seq.
(On Behalf of Plaintiffs and All Class Members)**

115.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

116.   Plaintiffs bring this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 Plaintiffs.

117.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

118.   The Product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

119.   Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

120.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

121.   Defendant represented in writing that the Product is capable of securing bottles and cans through its "Load-and-Lock" Gasket technology.

122.   These statements were made in connection with the sale of the Product and relate

31

to the nature of the Product and affirm and promise that the Product is as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

123.    As alleged herein, Defendant breached the written warranty by selling consumers a Product that is not capable of securing bottles and cans through its "Load-and-Lock" Gasket technology.

124.    Plaintiffs have purchased more than $25 worth of the Product within the Class Period.

125.    The Product can cost more than $24.

126.    The Product does not conform to the Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (On Behalf of Plaintiffs and All Class Members)

127.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

128.    Defendant is in the business of manufacturing, distributing, marketing and advertising the above listed Product.

129.    Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiffs and Class Members that the Product is capable of securing bottles and cans through its "Load-and-Lock" Gasket technology.

130.    Defendant breached the implied warranty of merchantability in that Defendant's Product's ingredients deviate from the label and product description, and reasonable consumers

expecting a product that conforms to its label would not accept the Defendant's Product if they knew that it actually is prone to corrosion and unsafe due to bottles falling out of the casing and exposing consumers to injury and property damage.

131.    Within a reasonable amount of time after the Plaintiffs discovered that the Product was prone to corrosion and unsafe due to bottles falling out the Product's casing, Plaintiffs notified the Defendant of such breach.

132.    The inability of the Defendant's Product to meet the label description was wholly due to the Defendant's fault and without Plaintiff's or Class Members' fault or neglect and was solely due to the Defendant's manufacture and distribution of the Product to the public.

133.    As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Product, together with interest thereon from the date of purchase.

**NINTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(On Behalf of Plaintiffs and All Class Members)**

134.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

135.    Defendant knew or had reason to know that the Plaintiffs and other Class Members were buying its Product with the specific purpose of buying products that is capable of securing bottles and cans through its "Load-and-Lock" Gasket technology.

136.    Plaintiffs and the other Class Members relied on the Defendant in selecting its Product to fit their specific intended use.

137.    Defendant held itself out as having particular knowledge of the Defendant's Product's features and technology.

138.    Plaintiffs' and Class Members' reliance on Defendant in selecting Defendant's

Product to fit their particular purpose was reasonable given Defendant's claims and representations in its advertising, packaging and labeling concerning the Product's features and benefits.

139.     Plaintiffs and the other Class Members' reliance on Defendant in selecting Defendant's Product to fit their particular use was reasonable given Defendant's particular knowledge of the Product it manufactures and distributes.

140.     As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Product, together with interest thereon from the date of purchase.

## TENTH CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY- DEFECTIVE DESIGN
### (On Behalf of Plaintiffs and All Class Members)

141.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

142.     Defendant designs, manufacturers, formulates, packages, distributes, promotes, markets and/or sells a product purportedly designed to be capable of securing standard sized bottles and cans.

143.     Consumers like the Plaintiffs use the Product in a reasonably foreseeable manner and without substantial change in the condition of the Product.

144.     Defendant knows, or should know, that use of the Product in its intended manner would result in leaks, spills, corrosion, slippage and potential injury and property damage due to the shortcomings of its so-called "Load-and-Lock" Gasket technology.

145.     Defendant's Product is defective in its design and unreasonably dangerous for consumers, particularly when consumers attempt to drink from bottles and cans in the normal course, and therefore are mislabeled because use of the Product exposes consumers to, among

other things, laceration, tooth breakage, facial injury, sickness, pain and suffering (including, without limitation, due to the ingestion of rust), not to mention property damage from the instability of bottles and cans.

146.    At all times relevant to this action, including presently:

    a.    Defendant was aware of the potential for harm and property damage as a result of the intended use of its Product.

    b.    Defendant failed to design its product so that standard bottles and cans would be secure in the casing, and would not leak and/or corrode, thus exposing consumers to personal injury and property damage.

    c.    Defendant knew or should have known of appropriate redesigns, retrofits and/or modifications to protect against leaks, corrosion, can or bottle slippage, but negligently and/or consciously disregarded this knowledge and failed to redesign, modify and/or retrofit the Product.

    d.    Defendant represented to consumers and the general public that the Product was indeed capable of securing standard bottles and cans without causing harm or property damage.

    e.    At the time these representations were made, Defendant knew or should have known that its representations were false, misleading, and /or that there was no reasonable basis to believe that they were true.

    f.    The continued use of the Product continue to pose a significant threat to consumers.

    g.    Defendant has failed to provide adequate warnings of the known and foreseeable risk of the use of the Product.

h.   Defendant failed to conduct adequate scientific studies to evaluate the safety of its product.

148.   The above described defects in Defendant's Product existed when the Product left Defendant's possession, and still exist today.

149.   Defendant's Product continues to be harmful to an extent beyond that which would be contemplated by the ordinary consumer, and/or the risk of harm to consumers continue to outweigh the cost to Defendant to reduce or eliminate the risk.

150.   As a direct and proximate result of the defects alleged herein, certain of Plaintiffs and Class members will continue to be exposed to and actually sustain bodily injury and property damage.

151.   Plaintiffs are informed, believe, and alleges that as a further direct and proximate result of the acts and omissions of Defendant alleged herein, Plaintiff and Class members will sustain increased costs and expenses due the use of the Product.

152.   Defendant knows and is substantially certain that its alleged acts and omissions described above have caused or have the propensity to cause injury and damage, and that each of the omissions described herein were done knowingly, willfully, and with oppression, fraud and/or malice.  Such conduct was further performed with the intent to induce reliance by a class of consumers, the public, and specifically, Plaintiffs who bought into Defendant's outdoor marketing scheme.  Defendant profited significantly from its false representation in conscious disregard of the known risks to its consumers and Class members.

153.   Defendant acted and continues to act maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Plaintiffs and Class members.

## ELEVENTH CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY - FAILURE TO WARN
### (On Behalf of Plaintiffs and All Class Members)

154. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

155. Defendant designs, manufactures, formulates, promotes, markets and/or distributes the Product.

156. Defendant knows that individuals or companies purchase and use the Product without inspection for defects.

157. Defendant is aware that the use of the Product purchased or otherwise acquired (directly or indirectly) from it would result in the Product being used and operated consistent with Defendant's representations.

158. Defendant is aware if its product's propensity for corrosion and leaks, and further aware of the risk of injury should the Product be used as intended, i.e., drinking from bottles and cans encased in the Product's defectively designed casing.

159. Defendant's Product is used by consumers in a reasonably foreseeable manner and without substantial change in the condition of the Product.

160. Despite the known and foreseeable risk of harm and property damage resulting from the use of the Product, Defendant fails to provide adequate warnings of, or take any other precautionary measures to eliminate or mitigate those hazards.

161. Defendant fails to adequately warn against the foreseeable misuses of its Product, including with respect to certain configurations of bottles and cans.

162. Defendant fails to describe such hazards or provide any precautionary statements regarding such hazards in the labeling or advertising of its Product.

163. As a direct and proximate result of Defendant's failure to warn of the hazards

posed by the use of the Product, Plaintiffs and Class members continue to be exposed to

substantial and unreasonable risks of bodily harm and property damage.

164.     As a direct and proximate result of the Defendant's acts and omissions as alleged

herein, Plaintiffs and Class members will incur investigation, remediation, treatment and other

costs associated with the use of the Product.

## TWELFTH CAUSE OF ACTION
## STRICT LIABILITY MISREPRESENTATION
(On Behalf of Plaintiffs and All Class Members)

165.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

166.     Defendant made representations of facts and omissions to Plaintiffs and All Class

Members, which are more fully set forth in the preceding paragraphs of the Complaint, on its

own personal knowledge under circumstances in which it necessarily ought to have known the

truth or untruth of the statements.

167.     The Plaintiffs and All Class Members had an economic interest in the transaction.

Specifically, they paid an inflated purchase price for the Product.

168.     The representations the Defendant made were false.

169.     The Plaintiffs and All Class Members believed the misrepresentations Defendant

made and relied on them to their detriment.

170.     The Plaintiffs request the Court to order that the Defendant reimburses Plaintiffs

and All Class Members for their damages.

171.     The Plaintiffs also requests that the Court award punitive damages.

## THIRTEENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
(On Behalf of Plaintiffs and All Class Members)

179.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

180.    Defendant had a duty of care to the Plaintiffs and All Class Members.

181.    Defendant made representations of facts and omissions to Plaintiffs and All Class Members, which are more fully set forth in the preceding paragraphs of the Complaint.

182.    The representations the Defendant made were false.

183.    The Plaintiffs and All Class Members believed the misrepresentations Defendant made and relied on them to their detriment.

184.    The Defendant was negligent in its representation because it failed to exercise ordinary care, failed to exercise the care usually exercised by person ordinary intelligence and prudence, lacked reasonable care in ascertaining the facts, and/or made the representation without the skill or competence required in their business.

185.    The Plaintiffs request the Court to order that the Defendant reimburses Plaintiffs and All Class Members for their damages.

186.    The Plaintiffs also requests that the Court award punitive damages.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiffs as the representative of the Class under Rule 23 of the FRCP;

(b)    Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York and Wisconsin consumer protection laws;

(c)    Awarding monetary damages, including treble damages;

(d)    Awarding punitive damages;

(e)     Awarding Plaintiffs and Class Members their costs and expenses incurred in this

action, including reasonable allowance of fees for Plaintiffs' attorneys and

experts, and reimbursement of Plaintiffs' expenses; and

(f)     Granting such other and further relief as the Court may deem just and proper.


Dated: November 30, 2018

**MIOTA LAW LLC**

By: /s/ Jacob Miota
     Jacob E. Miota (JM-4751)
     Miota Law LLC
     1400 E. Olive Street
     Milwaukee, WI  53211-1828
     Direct dial: 414.973.9305
     Facsimile: 414.386.4675
     jmiota@miotalaw.com

**HANSEN REYNOLDS LLC**

By: /s/ Michael C. Lueder
     Michael C. Lueder (*Pro Hac Vice Motion forthcoming*)
     Hansen Reynolds LLC
     301 N Broadway, Suite 400
     Milwaukee, Wisconsin 53202
     Phone: 414.455.7676
     Facsimile: 414.273.8476
     mlueder@hansenreynolds.com