UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LANCE PEROUTKA, NIKKI PRIBNOW,
and OTIS FUNG, individually on behalf of
themselves and all other similarly situated,

     Plaintiffs,

    v.

YETI COOLERS, LLC,

     Defendant.

Case No. 1:18-cv-6827-AMD-CLP

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

---

**MIOTA LAW LLC**

By: /s/ Jacob Miota
Jacob E. Miota (JM-4751)
1400 E. Olive Street
Milwaukee, WI 53211-1828
Direct dial: 414.973.9305
Facsimile: 414.386.4675
jmiota@miotalaw.com

**HANSEN REYNOLDS LLC**

By:  /s/ Michael C. Lueder
Michael C. Lueder (*Pro Hac Vice*)
301 N Broadway, Suite 400
Milwaukee, Wisconsin 53202
Phone: 414.455.7676
Facsimile: 414.273.8476
mlueder@hansenreynolds.com

*Attorneys for Plaintiffs*

# Table of Contents

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ....................................................................................................................... 2

    I.    Plaintiffs state a claim for consumer fraud and deceptive business practices. ................... 2

        A.    Plaintiffs state claims under General Business Law Sections 349 and 350. ............... 2

        1.    The relevant legal standards. ...................................................................................... 2

        2.    The Amended Complaint readily meets the legal standards for pleading actionable

        claims under Sections 349 and 350. ...................................................................................... 3

        a.    Defendant's sales practices are "consumer-oriented." ................................................ 4

        b.    Defendant's statements are "materially misleading." ................................................. 4

        c.    Plaintiffs sufficiently alleged injury. ......................................................................... 7

        B.    Plaintiffs stated a claim under the Wisconsin deceptive advertising statute. ............... 8

        1.    Legal standard. ........................................................................................................... 8

        2.    The amended complaint meets the legal standard for pleading a Wis. Stat. § 100.18

        claim. ........................................................................................................................... 8

     C.    Plaintiffs have stated intentional misrepresentation claims. .......................................... 9

    II.    Plaintiffs' breach of warranty claim survives. ..................................................................... 9

    III.    This Court should exercise pendent jurisdiction over Plaintiffs Lance Petrouka's and Nikki

        Pribnow's claim. ...................................................................................................... 10

    IV.    Plaintiffs have standing to pursue injunctive relief. .......................................................... 11

    V.    Defendants have standing to assert claims on behalf of unnamed class members. ............ 12

    VI.    Plaintiffs should be given leave to amend to address pleading deficiencies. .................... 14

    VII.    Defendants motion to transfer to the Western District of Texas should be denied. .......... 15

A.  Plaintiffs' chosen forum is entitled to substantial consideration and weighs against transfer. ................................................................................................................ 16

B.  The convenience of witnesses and the parties does not clearly and convincingly favor transfer; the availability of process to compel attendance weighs against it. ............... 16

C.  The location of documents and relative ease of access to proof weighs against transfer. .................................................................................................................................. 18

D.  The locus of operative facts weighs against transfer ...................................................... 19

E.  The relative means of the parties weighs against transfer .............................................. 19

F.  This court is more familiar with New York law than a Texas court. ............................. 19

G.  Trial efficiency and the interests of justice weigh against transferring the case to Texas. .................................................................................................................................. 19

CONCLUSION ..................................................................................................................... 20

# CASES

*Ackerman v. Coca-Cola, Inc.*, 2010 WL 2925955 (E.D.N.Y.) ...................................................... 5, 7

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) ..................... 10

*Allen v. Conagra Foods, Inc.*, 2018 WL 6460451 (N.D. Cal.) ................................................. 10, 11

*Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160 (2nd Cir. 1978) ............................ 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 1

*Belfiore v. Procter & Gamble, Co.*, 94 F. Supp. 3d 440 (2015). .................................................. 11

*Bell Atlantic Corp. v. Twombly*, 544 U.S. 544 (2007) ................................................................... 1

*Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246 (E.D.N.Y. 2014) .......................................... 9

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
    137 S. Ct. 1773 (2017) ........................................................................................................... 11

*Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) .................................. 18

*City of Perry v. Procter & Gamble Co.*, 2016 WL 5416508 (S.D.N.Y.) .............................. 16, 18

*Computer Associates International, Inc. v. Simple.com, Inc.*,
    2005 WL 8161255 (E.D.N.Y.) .................................................................................................. 8

*Cook v. Amedisys, Inc.*, 2013 U.S. Dist. LEXIS 50136 (D. Conn. Apr. 8, 2013) ........................ 17

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2nd Cir. 2006) ..................................................... 15

*Datalogix Int'l, Inc. v. Sandridge Food Corp.*,
    1991 WL 278924 (S.D.N.Y. Dec. 18, 1991) .................................................................. 17

*Drees v. Lykes Bros. S.S. Co.*, 500 F. Supp. 15 (1980) ................................................................. 18

*Editorial Musica Latino Americana, S.A. v. Mar Int'l Records, Inc.*,
    829 F. Supp. 62 (S.D.N.Y. 1993). ....................................................................................... 15

*Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994) ... 5

*Gruss v. British Broad Corp.*, 386 F.3d 224 (2nd Cir. 2004) ...................................................... 16

*Guariglia v. Procter & Gamble Co.*, 2018 WL 1335356 (E.D.N.Y.) ........................................... 9

*In re Bayer Corp. Combination Aspirin Products and Sales Practices Litigation*,

701 F. Supp. 2d 356 (E.D.N.Y. 2010) ............................................................................ 13

*In re Frito-Lay N.A. All Natural Litig.*, 2013 WL 4647512 (E.D.N.Y.).......................................... 5

*In re Grand Theft Auto Video Game Consumer Litig.*, 2006 WL 3039993 (S.D.N.Y.) .............. 14

*In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y.1996) ...................... 14

*Izquierdo v. Mondelez International*, Case No. 16-CV-04097, 2016 WL 6459832 (S.D.N.Y.) .... 7

*Jernow v. Wendy's Int'l, Inc.*, 2007 WL 4116241 (S.D.N.Y.) ...................................................... 7

*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 N.Y.S.2d 452, (2012) ................. 3, 4

*Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014).................................... 5, 7

*Laumann Mfg. Corp. v. Casting USA, Inc.*, 913 F. Supp. 712 (E.D.N.Y 1996).......................... 15

*Le v. Kohl's Dept. Stores, Inc.*, 2016 WL 498083 (E.D.Wis) ...................................................... 12

*Lipsky v. Commonwealth United Corp.*, 551 F. 2d 887 (2d Cir. 1976) ........................................ 13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
     797 F.3d 160 (2nd Cir. 2015)............................................................................................ 14

*MAK Mktg. v. Kalapos*, 620 F. Supp. 2d 295 (D. Conn. 2009) ................................................... 18

*Marcus v. American Contract Bridge League*, 562 F. Supp. 2d 360 (D. Conn. 2008) ............... 18

*Martignago v. Merrill Lynch & Co., Inc.*, 2012 WL 112246 (S.D.N.Y.)..................................... 16

*Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504 (S.D.N.Y. 2016) ................................................... 8

*Myers v. Lennar Corp.*, 2010 WL 1992200 (E.D.N.Y.) .............................................................. 18

*Nasdaq Stock Mkt., Inc. v. Achipelago Holdings, LLC,*
     336 F. Supp. 2d 294 (S.D.N.Y. 2004)................................................................................ 6

*New World Solutions, Inc. v. Name Media Inc.*,
     150 F. Supp. 3d, 287 n. 26 (S.D.N.Y. 2015)...................................................................... 3

*New York Marine and General Ins. Co. v. Lafarge North America, Inc.*,
     599 F.3d 102 (2d Cir. 2010)............................................................................................... 15

*Optima Media Group Limited v. Bloomberg L.P.*, 2019 WL 1746107 (S.D.N.Y)........................ 8

iv

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2nd Cir. 2015)................................................................. 4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
    85 N.Y.2d 625 N.Y.S.2d 529 (1995) ......................................................................................... 4

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2nd Cir. 2009)......................................................... 3

*Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175 (S.D.N.Y. 1995) .................................... 15

*Ramirez v. Dollar Phone Corp.*, 2009 WL 3171738 (E.D.N.Y.) .................................................. 13

*Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496....................................................................13, 14

*Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013) ........................................ 12

*Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .......................................... 12

*Sealock v. Covance, Inc.*, 2018 WL 2290698 (S.D.N.Y. May 18, 2018) ...................................... 13

*Singleton v. Fifth Generation, Inc.*, 2016 WL 406295 (N.D.N.Y.) ................................................. 7

*Sloan v. GM, LLC,* 287 F. Supp. 3d 840 (N.D. Cal. 2018)...................................................... 10, 11

*Spitzer v. General Electric Co. Inc.*, 302 A.D.2d 314, 756 N.Y.S.2d 520 (2003)......................... 3

*State of New York v. General Electric Co.,*
    302 A.D.2d 314, 756 N.Y.S.2d 520 (1st Dep't 2003) ........................................................... 4

*Stolz v. Fage Dairy Processing Industry, S.A.*, 2015 WL 5579872 (E.D.N.Y. 2015)................. 16

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) .................................... 5

*Verizon Directories Corp. v. Yellow Book USA, Inc.,*
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ...................................................................................... 6

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010)......................................... 1

*Weidenhamer v. Expedia, Inc.*, 2015 WL 1292978 (W.D. Wash. Mar. 23, 2015) ....................... 12

*Winter v. Pinkins*, 2017 WL 5496278 (S.D.N.Y.) ........................................................................ 13

*Zaltz v. JDATE*, 952 F. Supp. 2d 439 (E.D.N.Y. 2013)................................................................ 19

**STATUTES**

28 U.S.C. § 1404(a) ...................................................................................................................... 16
GBL §§ 349.......................................................................................................................... passim

GBL §§ 350.............................................................................................................. passim
Wis. Stat. § 100.18............................................................................................... 1, 8

 **RULES**

Fed. R. Civ. P. 23.................................................................................................. 13, 14
Fed. R. of Civ. P. 9(b)............................................................................................ 8, 9
Fed. Rule Civ. P. 12(f).............................................................................................. 13

**INTRODUCTION**

This is in response to Yeti Coolers, LLC's ("Defendant" or "Yeti") Motion to Dismiss and in the Alternative to Transfer Venue. The Motion to Dismiss should be granted on Counts Seven (Magnuson Moss), Eight (Strict Liability Misrepresentation), and Nine (Negligent Misrepresentation). For the reasons stated herein, the Motion to Dismiss should be denied on the remaining claims. The Motion to Transfer should also be denied.[1] The principle deficiency is Defendant's brief is its unreasonable expectations regarding Plaintiffs pleading obligations.

"To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 401 (E.D.N.Y. 2010).

Defendant mostly ignores these bedrock pleading principles. Defendant would have Plaintiffs list specific dimensions of bottles and cans that the Yeti Colster fails to hold securely (Br., p. 12) It wants Plaintiff to describe the specific circumstances in which bottles slipped from the Colster. (Br., p. 12) Defendant apparently believes Plaintiffs must allege something like this: "On May 1, 2018, Otis Fung was drinking a cold Bud Light measuring 2 5/16" in diameter from

---

[1] Defendant notes that Plaintiffs filed their Amended Complaint two days after the Court directed it to do so. The late filing was due to the undersigned's calendaring error. However, the Defendant was not prejudiced by the error. The Amended Complaint mostly fixed typos and *removed* claims from the case.

his Yeti Colster and when he tipped the bottle to a 45° angle it slipped from the Colster and smashed him in the teeth." However, this level of specificity is not necessary for the Court "to draw the reasonable inference that the Defendant is liable for the misconduct alleged."

## STATEMENT OF FACTS

Plaintiffs Lance Peroutka and Nikki Pribnow purchased their Yeti Rambler Colster (the "Product") on or about October 6, 2015 from Backcountry.com. (Amended Complaint ("AC") ¶ 36) Plaintiff Otis Fung purchased the Product from online retailer Amazon.com on April 20, 2018. (AC ¶ 40) All three read and relied on Yeti's representations on the Product's label and as advertised in various retail and online stores. (AC ¶¶ 24, 41) These representations included statements that the Product's "Lock-and-Load" gasket technology would hold standard sized bottles and cans "securely in place." (AC ¶¶ 10, 11, 42)

Yeti's statements about the Product were and are not true. (AC ¶ 4) The Product cannot securely hold the majority of beer bottles used in the United States. (AC ¶¶ 12, 30) Plaintiffs have paid a premium price for the Product, which fails to live up to its billing. (AC ¶ 28) Plaintiffs would not have paid this premium price but for Defendant's misrepresentations. (AC ¶¶ 29, 32)

## ARGUMENT
I.  **Plaintiffs state a claim for consumer fraud and deceptive business practices.**
    A.  **Plaintiffs state claims under General Business Law Sections 349 and 350.**

    1.  **The relevant legal standards.**

Section 349 of the New York General Business Law is a broad consumer protection statute. It provides, in relevant part: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any services in this state are hereby declared unlawful." N.Y. GEN. BUS. LAW § 349(g). Statements are actionable under Section 349, even

if literally true, if there is "evident capacity of the representations at issue to mislead even reasonable consumers acting reasonably under the circumstances." *Spitzer v. General Electric Co. Inc.*, 302 A.D.2d 314, 315, 756 N.Y.S.2d 520, 523 (2003). Section 350 of the New York General Business Law offers consumers redress when they are injured by false advertising. Section 350 provides that false advertising in the conduct of any business, trade or commerce or in the furnishing of any service is unlawful. Section 350 defines "false advertising" as "advertising, including labeling, of a commodity… if such advertising is misleading in a material respect."

Significantly, justifiable reliance by plaintiff is not an element of *either* a Section 349 or a Section 350 statutory claim, as the New York Court of Appeals clarified in *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 453 (2012):" Justifiable reliance by the plaintiff is not an element of the statutory claim." (Citations omitted). *See, e.g., New World Solutions, Inc. v. Name Media Inc.*, 150 F. Supp. 3d 287, 330 n. 26 (S.D.N.Y.) (holding that there is no reliance requirement under Sections 349 or 350, pursuant to *Koch*, but noting that a number of federal courts continue to incorrectly impose a reliance requirement when interpreting Section 350) (collecting cases).

### 2.   The Amended Complaint readily meets the legal standards for pleading actionable claims under Sections 349 and 350.

The Amended Complaint amply details Defendant's deception and false advertising for notice pleading purposes.[2] Successfully stating a claim under either Section 349 (deceptive practices) or Section 350 (false advertising) is easy and straightforward. The same test is used – "a plaintiff must allege that a defendant has engaged in: (1) consumer-oriented conduct that is (2)

---

[2] Section 349 and 350 claims "need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2nd Cir. 2009).

materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act and practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 299 (2nd Cir. 2015), *quoting Koch v. Acker, Merrall & Condit Co.*

Yeti claims that its "Lock-and-Load Gasket" technology secures drinks in place and fits standard cans and bottles "like a glove". (AC ¶¶ 3, 11) Significantly, Yeti states that the Product "*fits standard 12 oz cans and bottles.*" (AC ¶ 11) While a different case might require debate about the meaning of the word "standard," there can be no real dispute here. Budweiser/Anheuser Busch products account for at least 47.9 percent of the domestic beer market. (AC ¶ 12) The Yeti Colster cannot securely hold bottles of beer from this leading U.S. manufacturer. (AC ¶ 13)

### a.   Defendant's sales practices are "consumer-oriented."

It is axiomatic that Defendant's misleading sales practices are directed expressly at consumers, and so, are "consumer-oriented." Therefore, the first element of the Section 349 and 350 violations is easily met. *Orlander*, 802 F. 3d at 299.

### b.   Defendant's statements are "materially misleading."

A deceptive act or practice which is "misleading in a material way" is one which is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *State of New York v. General Electric Co.*, 302 A.D.2d 314, 315, 756 N.Y.S.2d 520, 523 (1st Dep't 2003). Section 349 does not require proof of scienter or "intent to defraud or mislead." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 625 N.Y.S.2d 529, 532 (1995).

Whether Defendant's marketing of the Yeti Rambler Colster is materially deceptive to a reasonable consumer calls for a determination by the trier of fact. Courts recognize that "[t]he

falsity of advertising is an issue of fact." *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1532 (S.D.N.Y. 1994). The factual question of whether an advertisement is false or misleading is not appropriate for resolution on a motion to dismiss. *See, e.g., Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (holding that it is inappropriate to resolve whether an advertisement is false or misleading on a motion to dismiss because the court must look to extrinsic evidence "to determine what 'the person to whom an advertisement is addressed find[s] to be the message,'" *quoting Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 166 (2nd Cir. 1978)); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) (denying motion to dismiss where product label included confusing and/or contradictory information about the contents, "[b]ecause it is unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or mislead."); *In re Frito-Lay N.A. All Natural Litig.*, 2013 WL 4647512 at *15 (E.D.N.Y.) (determination of whether consumers would be misled by the word "natural" on the product label generally cannot be determined on a motion to dismiss); *Ackerman v. Coca-Cola, Inc.*, 2010 WL 2925955 at *17 (E.D.N.Y.) (whether an advertisement is deceptive "is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss").

The Amended Complaint adequately alleges that the Defendant's marketing of its Yeti Rambler Colster has the capacity to mislead a reasonable consumer acting reasonably under the circumstances. It is plausible that a reasonable consumer purchasing the Product purporting to fit "standard" size bottles and cans would believe that the Product would securely hold the bottles of the world's largest beer manufacturer. Defendants claims of pleading deficiencies are not well founded. For example, Defendants question whether Fung "unequivocally" stated that he viewed

its advertising before he purchased. (Br., p. 10) However, Fung alleged he relied on the statements so plainly he viewed than before buying. (AC ¶ 41)

Defendant also argues that Plaintiffs' claims should fail because the challenged advertising statements "do not come close to containing the level of concrete, measurable, informational content" required to support a false advertising claim. In other words, Defendants assert that their representations constitute nothing more than non-actionable puffery.

"Puffery", however, is a <u>factual</u> defense. As such, courts routinely deny motions to dismiss on this basis because the question of what constitutes puffery cannot generally be resolved without evidence of how the advertisement is perceived by actual customers. *See e.g., Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407-08 (E.D.N.Y. 2004) (denying motion to dismiss based on puffery because a fair evaluation of what was being communicated and what was being understood by an advertisement must be based on evidence and not just the pleadings); *Nasdaq Stock Mkt., Inc. v. Achipelago Holdings, LLC*, 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004) (puffery defense "necessitates a fact-specific determination of whether the advertisements at issue contain an implied falsehood sufficiently specific to mislead the relevant consumers").

Here, Defendant's advertisements and marketing statements about the Product are specific in that they claim to hold "standard" size bottles and cans. While a definition of "standard" may be variable at the margins, a reasonable fact finder could conclude that a Colster which cannot securely hold bottles from America's top beer manufacturer does not meet any reasonable definition of "standard."

### c.    Plaintiffs sufficiently alleged injury.

The named Plaintiffs and the other class members have been damaged because they bought and paid a premium price for the Product. *See, e.g., Ackerman*, 2010 WL 2925955 at *23 ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." (collecting cases)).

The Amended Complaint alleges a cognizable injury. The named class representatives and the other class members have all been damaged because they bought and paid a premium price for the Product that does not perform as advertised. The Plaintiffs specifically alleged that but for the Defendants deceptive statements, they would not have been willing to pay the high price they paid for the Product.[3] (AC ¶ 42)

Courts regularly find such allegations to be adequate to meet the injury requirement of Sections 349 and 350. *See e.g., Jernow v. Wendy's Int'l, Inc.*, 2007 WL 4116241 at *3 (S.D.N.Y.) (allegations that Wendy's charged plaintiff a premium for French fries with lower trans fat than actually contained in French fries were sufficient to withstand motion to dismiss); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295 at *11 (N.D.N.Y.) ("It is well-established that paying a premium for a product can constitute an actual injury under N.Y. G.B.L. § 349," *citing Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("A plaintiff adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product based on the allegedly misleading representations."). Thus, Plaintiffs have alleged that they paid too high a price for the Product. All the class members have suffered the "price premium" injury.

---

[3] Defendant heavily relies on *Izquierdo v. Mondelez International*, Case No. 16-CV-04097, 2016 WL 6459832 (S.D.N.Y.) to support its argument that Plaintiffs failed to allege a cognizable injury. Defendant's reliance is misplaced. *Izquierdo* supports Plaintiffs' position. In that case, the court dismissed plaintiff's Section 349 claim specifically and expressly because he failed to allege "he paid a *higher* price for [the product] than they otherwise would have absent deceptive acts." *Id.* Plaintiffs' Amended Complaint suffers no such deficiency.

The third element of a Section 349/350 claim is thus readily satisfied.

**B.      Plaintiffs stated a claim under the Wisconsin deceptive advertising statute.**

**1.      Legal standard.**

For purposes of this brief, Plaintiffs concede that a Wis. Stat. § 100.18 claim must be plead with particularity. However, the Fed. R. of Civ. P. 9(b) particularity requirements must be read in harmony with the principles of notice pleading. *Computer Associates International, Inc. v. Simple.com, Inc.*, 2005 WL 8161255 at *25 (E.D.N.Y.) A complaint need not provide all conceivable minutiae, but only enough detail to give a defendant notice of the particular misconduct alleged. *Id.*

Traditionally, pleading with particularity means Plaintiffs must allege to "who, what, when, where and how: the first paragraph of any newspaper story" of the supposed fraudulent act. *Optima Media Group Limited v. Bloomberg L.P.*, 2019 WL 1746107 at *3 (S.D.N.Y). "[A] plaintiff need not plead dates, times and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Id. quoting Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016)

**2.      The amended complaint meets the legal standard for pleading a Wis. Stat. § 100.18 claim.**

Plaintiffs stated a claim under Wis. Stat. § 100.18. Plaintiffs' Wisconsin claim is sufficient for all the same reasons the New York claims are sufficient. The Plaintiffs' Amended Complaint identifies Yeti as the "who"; the Product as the "what"; on-line as the "where"; the specific date of purchase as the "when"; and the advertisements themselves as the "how". In general terms, the Amended Complaint provides a description of the fraudulent representation; the date and the place on which the false advertisements were made; the manner in which Defendant made the representation; and the content of the false representation. The Defendant

cannot seriously maintain that it is confused or puzzled about the gravamen of Plaintiffs' complaint.

The cases Defendant cites are inopposite. Plaintiffs in those cases hinged their misrepresentation claims to the Defendants use of words like "best," "finest," "premium quality" and "masterpiece". The terms used here are specific, not statements of opinion. Defendant stated the Product would securely hold standard bottles and cans in place and it does not.

      **C.**    **Plaintiffs have stated intentional misrepresentation claims.**

To state a claim for intentional misrepresentation, a plaintiff must "allege the time, place, speaker and sometimes even the context of the alleged misrepresentation." *Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 259 (E.D.N.Y. 2014) As shown above, Plaintiffs sufficiently alleged a misrepresentation claim.

Defendant challenges the sufficiency of Plaintiffs' allegation that Defendant had no intent to deceive. (AC ¶ 91) However, Fed. R. Civ. P. 9 (b) permits "conditions of a person's mind" to the "alleged generally." Moreover, contrary to Defendant's assertion, "allegations of a collection of consumer complaints" are sufficient to establish knowledge at the pleading stage. *Guariglia v. Procter & Gamble Co.*, 2018 WL 1335356 at *10 (E.D.N.Y.) Having alleged that Defendant had knowledge of the defect in its product, Plaintiffs have sufficiently averred that Defendant possessed the required intent to deceive, at least for pleading purposes.

**II. Plaintiffs' breach of warranty claim survives.**

Plaintiffs inadvertently failed to allege that they provided timely notice of the breach of warranty. As shown in the Declaration of Michael C. Lueder, timely notice of the breach was provided prior to filing, on September 11, 2018. (Lueder Declaration ¶ 2)

**III.    This Court should exercise pendent jurisdiction over Plaintiffs Lance Petrouka's and Nikki Pribnow's claim.**

Yeti is incorrect in its assertion that this Court lacks jurisdiction over the Wisconsin Plaintiffs' case. The Court has personal, pendent jurisdiction because the parties' dispute "arise[s] out of a common nucleus of operative facts with a claim in the suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing sister circuits, including the Second Circuit, applying the same doctrine). In *Action Embroidery Corp.*, the Ninth Circuit explained the policy justification for personal, pendent jurisdiction:

> When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts. We believe that judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties is best served by adopting this doctrine.

*Id.* at 1181.

Applying that same reasoning, in *Sloan v. GM, LLC,* 287 F. Supp. 3d 840, 861-62 (N.D. Cal. 2018), the court exercised its jurisdiction over out-of-state plaintiffs' claims against GM because, *inter alia*, "the exercise of personal jurisdiction over the non-resident Plaintiffs' claims in this case will impose a *de minimis* burden on GM," and "if the Court were to decline to exercise jurisdiction, GM would face piecemeal litigation and would have to defend itself in several different courts on nearly identical issues. Because the claims at issue arise out of the same nucleus of operative facts, the adjudication of facts in those disparate proceedings would be likely to overlap and possibly to conflict with proceedings in this case."

The court in *Allen v. Conagra Foods, Inc.*, 2018 WL 6460451 at *7-8. (N.D. Cal.) adopted the same rationale and similarly found it had "personal jurisdiction over the nonresident named plaintiffs' claims under the doctrine of pendent personal jurisdiction." The court reasoned

"[d]oing so will serve the interests of judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties by preventing the need for multiple such actions in other states and potentially subjecting Conagra to inconsistent obligations. Further, Conagra is already before this court to defend against Allen's claims, and the additional burden is *de minimis*." *Id*. at *8 (internal citations and quotations omitted).

The *Sloan* and *Allen* courts' reasoning applies with equal force here. Permitting the Wisconsin plaintiffs to prosecute their claims in the Eastern District of New York will serve the same interests articulated in those cases. If Yeti's motion is granted, Yeti would be faced with litigation in Wisconsin and New York at a minimum. Rather than waste the Court's (and the parties') time and resources, this Court should deny Yeti's motion regarding the Wisconsin Plaintiffs and allow the parties to move forward, in a single proceeding, toward a resolution of their disputes.[4]

## IV. Plaintiffs have standing to pursue injunctive relief.

Yeti argues that Plaintiffs lack standing to bring claims for injunctive relief because they purportedly have not pled a "potential for any future injury." Br. at 7.

Plaintiffs allege Yeti's deceptive pricing practices continue to this day and are employed uniformly nationwide. Federal courts "have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer," because to "hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Belfiore v. Procter & Gamble, Co.*, 94 F. Supp. 3d 440 (2015).

---

[4] Yeti's reliance on *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) is misplaced. *Bristol-Myers*, a case involving a "mass action," not a "class action," is inapplicable here. *Allen*, 2018 U.S. Dist. LEXIS 208196 at *19 (Supreme "Court could not have intended in a sideways manner, to so drastically alter class action plaintiffs' ability to choose their forum.").

11

Plaintiffs also alleged that they "would purchase the Product again if the Product was redesigned…so that their bottles and cans are indeed securely held in place." (AC ¶ 59) The injury Plaintiffs seek to redress is an injury to their ability to rely, in the future, on Yeti's representations regarding its Product.

Inability to rely on a defendant's future labels is a sufficiently concrete and particularized injury. It is very similar to the type of past harm suffered – that is, being duped into buying a product (or paying more for it) by relying on the Defendant's representations in the first place. *See, e.g., Le v. Kohl's Dept. Stores, Inc.*, 2016 WL 498083 at *10 (E.D. Wis)(finding likelihood of future harm because "the Court is unclear just exactly what Le would be expected to be 'aware' of in order to avoid future harm from Kohls"); *Weidenhamer v. Expedia, Inc.*, 2015 WL 1292978 at *5 (W.D. Wash. Mar. 23, 2015) ("Imagine that Mr. Weidenhamer purchases air travel from Expedia in the future, and confronts the same deceptive pop-up ad. He is entitled to rely on the statements made in that ad, even if he previously learned that some of those statements were false or deceptive."); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 194 (D.D.C. 2013) (explaining that consumers "will be harmed—without an injunction—by not being able to rely on the 'salon-only' label with any confidence"); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("Should plaintiffs encounter the denomination 'All Natural' on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence."). Thus, Plaintiffs' allegations suffice to establish Article III standing to pursue claims for injunctive relief.

## V.   Defendants have standing to assert claims on behalf of unnamed class members.

The Court should reject Defendant's attempt to knock out the claims of putative class members residing outside of New York. In footnote 5 of its brief, the Defendant asserts the Court

should strike claims brought under the consumer protection and warranty statutes of any state other than New York.

Defendant ignores the Fed. Rule Civ. P. 12(f) standard. Courts have held that "motions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Winter v. Pinkins*, 2017 WL 5496278 at*2 n.1 (S.D.N.Y.) It also "is settled that [a Rule 12(f)] motion will be denied unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F. 2d 887, 893 (2d Cir. 1976). Defendants also ignore the rule that "a motion to strike class claims is considered premature if the issues raised are the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a)." *Sealock v. Covance, Inc.*, 2018 WL 2290698 at *1 (S.D.N.Y. May 18, 2018). Defendants fail to cite a single case granting the relief they seek in footnote 5.

Moreover, Defendant's statutory standing argument is premature. "The issue of standing is a constitutional one and should not be conflated with Rule 23 class action requirements." *Ramirez v. Dollar Phone Corp.*, 2009 WL 3171738 at *9 (E.D.N.Y.) (*citing and quoting* William B. Rubenstein et al., 1 Newberg on Class Actions § 2:7 (4th ed. 2008) for the proposition that individual standing is a distinct inquiry from the class prerequisites of Rule 23.

Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is "immaterial" because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states. *In re Bayer Corp. Combination Aspirin Products and Sales Practices Litigation*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 ("The Complaint makes clear that the so-called "sister state" consumer protection laws are only implicated by

members of the putative class. Hence, the fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' calling cards is immaterial."); *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 504–05 (S.D.N.Y.1996) ("[T]he question of standing is totally separate and distinct from the question of plaintiff s right to represent a purported class under Rule 23.

As the district court explained in *In re Grand Theft Auto Video Game Consumer Litig.*, 2006 WL 3039993 at *3 (S.D.N.Y.) where defendants argued that the named plaintiffs lacked standing to bring claims under the laws of states other than those in which they resided:

> The relevant question is not whether the Named Plaintiffs have standing to sue Defendants but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action. This question is ... appropriately answered through the class certification process.

It follows that the various state law claims cannot be dismissed for lack of standing when there is no requirement that the named plaintiffs have standing to bring them. Under the guise of standing, Defendant has raised the issues of adequacy of the representatives and whether there are common questions of law or fact that predominate over any questions affecting only individual members. *Ramirez*, 644 F. Supp. 2d at 504–05 (relying on 7AA Wright, Miller & Kane § 1780.1). These are issues to be addressed at the class certification stage.

**VI.    Plaintiffs should be given leave to amend to address pleading deficiencies.**

Plaintiffs have not yet had "the benefit of a ruling" on the sufficiency of the pleadings. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160 at 190-91 (2nd Cir. 2015) If the Court holds that any of the pleadings are deficient, Plaintiffs respectfully request leave to amend to cure any such deficiencies identified in the Court's order. *See Id.* (where "there [is] no decision yet as to the precise defects" in a complaint, plaintiffs may request leave to amend in an opposition brief without attaching a proposed amended complaint).

14

**VII.    Defendants motion to transfer to the Western District of Texas should be denied.**

Plaintiffs Larry Petrouka, Nikki Pribnow and Otis Fung, individually and on behalf of other similarly situated individuals, oppose Defendant's Motion to Transfer Venue. Defendant has not carried its burden to clearly and convincingly establish that this case should be transferred. In fact, most of the relevant factors, such as deference to Plaintiffs' choice of forum, the relative means of the parties, and trial efficiency and the interests of justice favor that this case remains in New York.

Before a case is transferred, there must be a real reason to transfer it. Transfers cannot be made just because the defendant prefers another forum. To transfer venue, a defendant must meet a significant burden of making a clear and convincing showing that the case should be transferred. *New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 113-14 (2nd Cir. 2010) ("[T]he propriety of [a clear and convincing evidence] standard to transfer motions is evident.") "The purpose of 1404(a) is not to shift the inconvenience from one party to the other." *Laumann Mfg. Corp. v. Casting USA, Inc.*, 913 F. Supp. 712, 721 (E.D.N.Y 1996) It is "firmly established" that, although district courts have "broad discretion," *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2nd Cir. 2006), a party seeking to transfer venue faces an uphill battle. *See Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995); *see also Editorial Musica Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66 (S.D.N.Y. 1993).

Plaintiffs concede that this case could have originally been brought in Texas. However, Plaintiffs deny that a transfer would promote "convenience and justice." Among the factors relevant to the "convenience and justice" inquiry are: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to

sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice. *See, e.g.,Martignago v. Merrill Lynch & Co., Inc.*, 2012 WL 112246 at *3-4 (S.D.N.Y.)

The balance of the relevant factors to be considered for a motion to transfer venue under 28 U.S.C. § 1404(a) militate against this case being transferred to Texas.

**A.     Plaintiffs' chosen forum is entitled to substantial consideration and weighs against transfer.**

The Court should defer to Plaintiffs' choice of forum (i.e., the Eastern District of New York). Contrary to Defendant's assertion, even in a class action context, a plaintiff's choice of forum is still entitled to some deference, particularly where there is no indicia of forum shopping.  *See Stolz v. Fage Dairy Processing Industry, S.A.*, 2015 WL 5579872 at* 6 (E.D.N.Y. 2015); *Gruss v. British Broad Corp.*, 386 F.3d 224, 230-31 (2nd Cir. 2004) Indeed, the very case upon which Defendant relies to enumerate the factors courts consider in a transfer review specifically gave plaintiffs' choice of forum "great weight" and denied the transfer. It too was a class action. *City of Perry v. Procter & Gamble Co.*, 2016 WL 5416508 at *2 (S.D.N.Y.)

**B.     The convenience of witnesses and the parties does not clearly and convincingly favor transfer; the availability of process to compel attendance weighs against it.**

Defendant cannot clearly establish that the convenience of the witnesses or the parties favors transferring this case. It is clear that a transfer to Texas would shift inconvenience from Defendant to the named Plaintiff Mr. Fung. Indeed Mr. Fung would be so inconvenienced by a transfer that he does not believe he could prosecute this case. (Fung Decl. ¶ 2) Asking Plaintiffs – who have less means than Yeti – to bear the costs of attending a trial in Texas weighs heavily

16

against a transfer there. *See Cook v. Amedisys, Inc.*, 2013 U.S. Dist. LEXIS 50136, at *6-7 (D. Conn. Apr. 8, 2013) (holding convenience of parties' factor did not weigh in favor of transfer where it would require plaintiffs, who have less means than the corporate defendant, to travel an inconvenient distance to testify at their own trial).

Some of the Texas witnesses Defendant identified are its own employees. This factor does not weigh in favor of transfer when most of the witnesses in Defendant's corporate home state are its own employees, as there is not likely an issue concerning uncooperative witnesses who must be compelled to attend trial. Courts have held that the convenience of defense witnesses who work in the corporate office is not relevant to the analysis of the convenience factor, because Defendant currently employs them and they are likely to appear at trial should be necessary. *See Datalogix Int'l, Inc. v. Sandridge Food Corp.*, 1991 WL 278924 at *4-5 (S.D.N.Y.) (transfer unnecessary where most of the proposed witnesses from one party were party's own employees and that company itself can assure their attendance at trial, should it be necessary).

The convenience of non-party witnesses is important, but does not support a transfer here. Defendant submitted declarations from former employee, Chris Keller, and current employee, David James Bell. They each stated the topics on which they and others have knowledge. The substance of the projected testimony, at this early stage, is of questionable relevance. The issue in the case is how reasonable consumers would interpret Defendant's advertising. The Keller Declaration focuses on topics such as the Colster's design, engineering and testing. It is not clear how testimony on these topics would be material here except, possibly, as to intent on the misrepresentation claim. So, too the list of potential witnesses regarding the marketing of this Product contained in the Bell Declaration overblown. Again, the principle

issue in this case is how a reasonable consumer would interpret Defendant's advertising, not how the advertising was developed.

Moreover, Keller and Bell no doubt spoke with Yeti's counsel and cooperatively prepared their Declarations. Nevertheless, neither Keller nor Bell stated that they would be unwilling to appear for a deposition or trial in this case. *Myers v. Lennar Corp.*, 2010 WL 1992200 at *5 (E.D.N.Y.) (Unavailability of witness argument fails when Defendant "does not actually assert that either witness has stated he would be unwilling to testify in that district.") Similarly, neither Bell nor Keller stated that other Yeti employees or third parties would be unwilling to testify in this district.

Even if individual witnesses refused to come to New York, any third party residing in Texas surely will be deposed in Texas, no matter when the case is venued. Their "depositions can be used at trial in the unlikely event this putative class action goes to trial." *See e.g., City of Perry v. Procter & Gamble Co.*, 2016 WL 5616508 at *2 (S.D.N.Y.); *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (The unavailability of process over third-party witnesses does not compel transfer where the practical alternative of offered videotaped or deposition testimony of a given witness exists."): *Drees v. Lykes Bros. S.S. Co.*, 500 F. Supp. 15, 18 (1980) ("[T]he weight given to the convenience of the witnesses may be diminished in view of the fact that their testimony is often in the form of deposition.")

## C.      The location of documents and relative ease of access to proof weighs against transfer.

"Courts in the Second Circuit recognize that, 'modern photocopying technology and electronic storage deprive this issue of practical or legal weight.'" *MAK Mktg. v. Kalapos*, 620 F. Supp. 2d 295, 310 (D. Conn. 2009); *see also Marcus v. American Contract Bridge League*, 562 F. Supp. 2d 360, 366 (D. Conn. 2008)(noting this factor is a "non-issue in today's world because

copy machines, electronic discovery and emails make it much easier to obtain documents at a distance.") Therefore, the location of documents and relative ease of access to proof in this case does not support transfer.

**D.    The locus of operative facts weighs against transfer.**

The locus of operative facts does not favor transferring this case to Texas. Fung purchased his Yeti online from his New York residence. He used the Yeti in New York and discovered it did not live up to its advertising in New York. The operative facts of this case as currently plead occurred in New York and Wisconsin, where the representations were made, not Texas.

**E.    The relative means of the parties weighs against transfer.**

Defendant cannot dispute that it possesses far greater financial resources than Plaintiffs. None of the Plaintiffs are on the Forbes 400 Richest People list. Mr. Fung stated that a transfer of this case to Texas would impose a great financial hardship on him. He asserted staying in New York is critical to his ability to maintain this lawsuit. A transfer would be disruptive to him, his work and his household. (Fung Decl. ¶ 2) Defendant is in a better position to absorb the costs of litigating in New York than the Plaintiffs litigating in Texas. Hence, this factor weighs heavily against a transfer. *See Zaltz v. JDATE*, 952 F. Supp. 2d 439, 463 (E.D.N.Y. 2013).

**F.    This Court is more familiar with New York law than a Texas court.**

The Amended Complaint raises claims under New York law. A New York court is likely more familiar with New York state law than a Federal Court in Texas court.

**G.    Trial efficiency and the interests of justice weigh against transferring the case to Texas.**

Transferring this case to Texas will not result in greater efficiency. The Eastern District of New York is not decidedly more congested than the Western District of Texas. One measure

of court congestion is "weighted filings". The Judicial Conference of the United States tracks weighted filings and reports on court congestion in its Judicial Caseload Profile. Weighted filings account for the caseload of each district by adjusting raw litigation data for case complexity. Using the weighted filing method of evaluating court congestion, the New York's Eastern District has 553 filings per judge while the Western District of Texas has 789. The Western District of Texas not only is a congested court, it has the <u>fourth</u> most total filings per judge, 1173, in the United States. The Eastern District of New York ranks 25th with 586 per judge. Moreover, the time from filing to disposition of the case is 8.6 months in both courts. (Lueder Declaration ¶ 3) The judicial efficiency factor favors keeping this case in New York.

The interests of justice also weigh against transfer. While the Court probably does not have general jurisdiction over it, Yeti has a heavy presence in New York. Its parent company, Yeti Holdings, Inc., is licensed to do business here. (Dkt. 6 (Yeti's Corporate Disclosure); (Lueder Declaration ¶ 4) Yeti has hundreds of authorized distributors in this state. (Lueder Declaration ¶ 5) Yeti is even traded on the New York Stock Exchange under the ticker symbol YETI. (Lueder Decl. ¶ 6) Given its heavy business presence in New York, it is not credible for Yeti to assert that the Eastern District of New York is not a convenient forum for it to defend a suit brought by one of its New York customers seeking recovery for himself, thousand of other New Yorkers and Yeti customers nationwide.

## <u>CONCLUSION</u>

Defendant cannot win its uphill battle of showing through clear and convincing evidence that a transfer to Texas is warranted. Rather, the relevant factors for deciding a transfer either weigh in favor of keeping the case in the Eastern District of New York or are neutral. Therefore,

Defendant's Motion to Transfer should be denied. Additionally, Defendants' Motion to Dismiss should be denied for the reasons stated in this brief.


Dated: June 13, 2019

Respectfully submitted,

**MIOTA LAW LLC**

By: /s/ Jacob Miota
    Jacob E. Miota (JM-4751)
    1400 E. Olive Street
    Milwaukee, WI 53211-1828
    Ph: 414.973.9305
    Facsimile: 414.386.4675
    jmiota@miotalaw.com

**HANSEN REYNOLDS LLC**

By: /s/ Michael C. Lueder
    Michael C. Lueder (*Pro Hac Vice*)
    301 N Broadway, Suite 400
    Milwaukee, Wisconsin 53202
    Phone: 414.455.7676
    Facsimile: 414.273.8476
    mlueder@hansenreynolds.com

*Attorneys for Plaintiffs*

21

## <u>CERTIFICATE OF SERVICE</u>

I, Michael C. Lueder, an attorney, certify that I caused a copy of the foregoing to be filed and served upon the below-listed individuals by Case Management/Electronic Case Filing System ("CM/ECF"), on June 13, 2019.

David P. Whittlesey
Shearman & Sterling LLP
111 Congress Avenue, Suite 1700
Austin, TX 78701
Phone: 512.647.1900
david.whittlesey@shearman.com

Brian H. Polovoy
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Phone: 212.848.4000
bpolovoy@shearman.com

*Attorneys for Defendant*

22